## MATTHIAS H. NICHOLLS and others *vs.* MORRIS PEAK and others.

Where land was conveyed in trust, with power to sell either at public or private sale whenever the trustee thought it advisable, and the proceeds of the property sold were not to be paid immediately to the beneficiary, but the trust was to continue, and the money derived from the sale was to be invested at the discretion of the trustee, *held* that a *bona fide* purchaser at the sale by the trustee was not bound to see to the application of the purchase money.

But the purchase must be *bona fide*, or the purchaser is not entitled to protection.

If the property is sold not for the purpose of executing the trust, but on any other purpose, and the purchaser knew it, he participates in the fraud, and is involved in its consequences; or if the sale is made under circumstances which would put a conscientious man on his guard, and the purchaser acts entirely regardless of such circumstances, he ought not to be permitted to derive any advantage from the purchase.

The trust deed, being on record, was constructive notice to the purchaser; and where the purchaser's deed, after describing the property, and designating therefrom whence the several shares were derived, stated that the share of C. C. (*cestui que trust*) was conveyed in trust for her use, *held* that this was actual notice of the trust.

Circumstances stated which make grantee of purchaser chargeable with knowledge of trust and its *violation.*

*Keasbey* and *Bradley*, for complainants.

*Dayton* and *Vroom*, for defendants.

THE CHANCELLOR. Samuel Humphreys was seized, as heir at law of his father, of an equal undivided sixth part of a farm in Salem county. His three brothers and two sisters, each of whom was seized of an equal undivided sixth, by their deed of conveyance, for and in consideration, expressed therein, of one dollar, and of natural love and affection they bore to Charlotte Costill, an illegitimate daughter of their father, but who had been brought up with them, and up to the time of the father's death had constituted one of the family, conveyed to the said Samuel Humphreys an equal undivided seventh part of the said farm, upon the following trust, in the said deed expressed, that he, the said Samuel Humphreys, his heirs and assigns, should and would hold, use, occupy, and rent the said real estate, and receive and have the rents, issues, and profits of the said share so conveyed to and for her, the said Charlotte, and that he would, from time to time, pay over the rents, issues, and profits to the said Charlotte during her natural life, taking her separate receipt therefor under her own hand and proper signature, and for her only separate use, benefit, and enjoyment during her natural life. And in further trust, that if the said Samuel Humphreys should find and believe that it would be most to the advantage of the said Charlotte that the said one-seventh part of the said real estate should be sold, then that he, the said Samuel, should sell the said land, either at public or private sale, for the best

price that could be got for the same, and that he should place the amount of the sale at interest on good and sufficient mortgage security, and from time to time pay unto the said Charlotte, for her sole and separate use, the yearly interest arising therefrom, and continue the said payment during her natural life, and taking her separate receipt for the same under her proper hand and signature. And in further trust, that if the said real estate should not be sold during the natural life of the said Charlotte, that the said Samuel, his heirs and assigns, should, after the death of the said Charlotte, convey the said real estate to such person or persons, in fee simple, as at the time of her death might be her heirs at law. And in further trust, that if the said real estate should be sold during the lifetime of the said Charlotte, the said Samuel should pay, or cause to be paid, immediately after the decease of the said Charlotte, to such person or persons as might be her heirs at law, the whole amount of the money derived from the sale of said land, in such shares or proportions as the said heirs might be entitled to according to the laws of this state regulating the distribution of the personal estate of a person dying intestate; and if there should be no persons entitled to the said land or money as aforesaid, that then the said Samuel should reconvey the said land, or pay the said money, as the case might be, to the said grantors, their heirs or assigns.

Subsequent to the execution of this trust deed, the brothers and sisters of Samuel Humphreys conveyed to him all their remaining interest in the property, so that he became seized in his own right of a title to all the property, except the one equal undivided seventh, which he so held in trust.

On the argument, the question was very thoroughly examined, and the numerous authorities upon it collated, as to what extent a purchaser, under a trust like this, is bound to look to the appropriation of the purchase money. I think there is no difficulty in extracting from the

authorities the principle which should govern the responsibility of the purchaser.

By the character of the trust, and the terms of its creation, the donors have reposed very much in the judgment and discretion of the trustee. The language is, "*if the said Samuel Humphreys should find and believe that it would be most to the advantage of the said Charlotte Costill that the one-seventh of the said real estate should be sold, then that he, the said Samuel Humphreys, should sell the said land either at public or private sale.*" The proceeds of the property, when sold, are not to be paid over immediately to the beneficiary, and the trust thus terminated by its complete execution. But the trust still continues. The trustee is to exercise his best judgment as to the sale of the land, and to his discretion and judgment are submitted the reinvestment of the proceeds. It would be a great clog upon such a trust, and would very greatly embarrass its advantageous execution, if the purchaser, under ordinary circumstances, was bound to see to the proper reinvestment of the purchase money. It would be a difficult matter to find a purchaser who would be willing to give a full value for the property, if, with his purchase, he assumed the responsibility of the trustee's faithfully executing his trust. If the sale is a *bona fide* one, and made in the faithful execution of the trust, the purchaser is not bound to see that the consideration money is appropriated for the purposes of the trust estate. But he must be a *bona fide* purchaser. If the trustee violate his trust, and the purchaser lends his aid and countenance, he is not entitled to protection. If the property is sold not for the purpose of executing the trust, but for any other purpose, and the purchaser knows it, he participates in the fraud, and is involved in its consequences; or, if the sale is made under circumstances which would put a conscientious man on his guard, and the purchaser acts entirely regardless of such circumstances, and shuts his eyes on purpose that he may not see the iniquity, he ought not to be permitted

Nicholls *v.* Peak.

to derive any advantage from his purchase. The case of *Wormley* v. *Wormley*, 8 *Wheat.* 422, establishes the principle, that if a trustee, in a marriage settlement under a a power to sell and reinvest, sells under circumstances that constitute a breach of the trust, namely not for the purpose of reinvestment, but for the purpose of paying his own debts, and the purchaser has notice of this, the land in his hands is affected with the trusts which previously attached to it. And notwithstanding the revised statute of the state of New York, which provides that, " where the trust shall be expressed in the instrument creating the estate, every sale, conveyance, or other act of the trustees in contravention of the trust shall be absolutely void ;" but that " no person who shall actually and in good faith pay a sum of money to a trustee, which the trustee, as such, is authorized to receive, shall be responsible for the proper application of such money according to the trust ; nor shall any right or title, derived by him from such trustee in consideration of such payment, be impeached or called in question in consequence of any misapplication by the trustee of the moneys paid," it was held, in *Champlin* v. *Haight*, 10 *Paige* 275, that if a purchaser, under a power in a will to trustees to sell and invest the proceeds for the purposes of the trust, has express notice, at the time of sale, that the sale was not made for the purpose of investing the proceeds in conformity with the trust created in the will, but for a different purpose, he is not protected. See 1 *Lead. Ca. in Eq.* 40, *Elliott* v. *Merryman.*

The gross breach of trust on the part of Humphreys is beyond all dispute. It is not denied, nor in any way palliated. He first mortgaged the property for his own private purposes, and then sold it absolutely with a total disregard as to the trust. I think it is equally clear that Thomas S. Smith was not a *bona fide* purchaser ; that he had actual notice of the trust—of its gross violation on the part of the trustee—and in fact that the purchase by

Smith, under the circumstances, was clearly fraudulent. His answer condemns him. He denies that he had any knowledge of the trust. The trust deed was upon record. That was constructive notice. But he had *actual* notice. The trust is referred to in the very deed under which Smith derives his title. After describing the property, and stating from whom the title to the several shares are derived, it states *that Charlotte Costill's share in the property was conveyed in trust for her use.* The trust thus appearing upon the very face of his own title, he had actual notice of its existence. It was stated on the argument, and not denied, that this deed is in Smith's own handwriting. This fact, however, is not proved, nor is it stated in the pleadings. It should not, therefore, have any weight as evidence against him.

On the 6th of January, 1849, Humphreys mortgaged the whole property, including the share he so held in trust, to Smith, to secure a debt of $1000. The same property was at that time mortgaged to one James Eakin by several mortgages, amounting, in the aggregate, to $3500. It was under such circumstances, and with these encumbrances upon the property, that in the month of February following the date of his mortgage, he took a deed for the property from Humphreys, which, upon its face, purports to be for the consideration of $7000. What Smith really paid for the property, he does not state in his answer. He very ingeniously avoids giving any satisfaction upon this important point. He says, that the sale was made in good faith, and for a full, fair, and *bona fide* consideration, and that, after deducting his own mortgage debt, and the interest due thereon, and also deducting from the purchase money the amount of mortgage debts held by other persons against the property, he paid in cash the whole balance of the said purchase money for the whole of the said premises, as set forth in his said deed of conveyance. But why avoid telling what the cash balance was, and how much money was paid? It is impossible for

us to ascertain by calculation, from any facts given us, what balance was found due after deducting the amount of encumbrances, for the amount of encumbrances is not given.

Again, although the defendant, Smith, does not say so in his answer, he means to be understood, that the consideration money expressed in the deed from Humphreys to him is the true consideration which he paid Humphreys for the property. This consideration is stated to be $8000; and yet we have the fact that, in less than eight months afterwards, he sells the property to the defendant, Moses Peak, for $7000—a loss of $1000. It may not be very extraordinary that Smith should have lost a thousand dollars by the speculation; but if he did lose it, it is certainly extraordinary that he did not make some explanation of it. The probability is he did not incur any such loss, or he would not have omitted to mention it. He does not complain of having made a bad speculation; and it is evident, from the tenor of his answer, that he does not mean to be so understood. The conclusion is, that the consideration expressed in the deed is not consistent with the truth, and that the answer is not entitled to the weight of a fair and candid answer.

But how can Smith be considered a *bona fide* purchaser? He knew of the trust. Its repeated violation was before his eyes in the mortgages with which the trustee had encumbered the trust estate. He assumed the payment of these very mortgages, the execution of each one of which was a violation of the trust; for the trustee had no authority to mortgage the trust estate. He does not deny that Humphreys was insolvent at the time, and that he knew it, nor does he deny but that he knew these mortgages were, every one of them, executed to secure the individual debts of Humphreys. He himself had countenanced the trustee in his breach of faith by taking a mortgage of $1000, which covered the trust property, to secure his own debt. It cannot be that, consistent with honest dealing, Smith could be permitted, under all these

Nicholls *v.* Peak.

circumstances, to hold the trust property discharged of the trust under the plea that he was ignorant of the rights of the *cestui que trust*, and did not understand that those rights were violated.

Can Morris Peak be considered a *bona fide* purchaser? Smith conveyed to him on the 8th of February, 1849. The property was then covered by three mortgages, given by Humphreys to Eakin, amounting together to $3500, and Peak purchased subject to these mortgages. He had constructive notice of the trust. The trust deed was upon record, and the trust appeared upon the very face of the title deed of Smith, from whom Peak was about to purchase. But he had *actual* notice of the trust. It is extraordinary that, after twice denying in his answer that he had either actual or constructive notice of the trust, he should afterwards twice admit a fact which shows he did have actual notice. What the mental reservation was in regard to his denial, it is difficult to conjecture. He says, both Smith and Humphreys, at the time of his purchase, expressly asserted, more than once, that the premises were clear of all encumbrances, except the mortgages to Eakin of $3500, and "that Humphreys, in further corroboration, asserted, and added that Charlotte Costill once had a right therein, but that he had bought her out, and nearly paid her all (or all but a little), which he shortly expected to pay her; that to be sure thereof, defendant and Thomas Smith again called upon said Samuel Humphreys, and again questioned him in relation to the situation of said premises, and he again most solemnly alleged and said, 'that he had bought her out, or her share, or her right, and had paid her nearly all,' which assertions, uttered with such appearance of truth, candor, frankness, and honesty, this defendant gave full credence to, and fully believed to be true."

I do not see, after this admission, how Peak can be regarded as a *bona fide* purchaser. If the information which Humphreys gave him was true, it would not help him.

Humphreys had no right to buy out the interest of the *cestui que trust* in the estate, and pay her off. The trust could not be extinguished in that way. Here Peak admits he had notice of Charlotte Costill's interest in the property. That interest was matter of record. He was bound to look to the record for information. He chose to rely upon the word of Humphreys. Humphreys deceived him, and he must be the sufferer. He did not exercise ordinary prudence.

There is an expression in the deed from Smith to Peak, which is made significant by the explanation which Peak gives of it. After giving a particular description of the premises, and stating that they were conveyed to the grantor by Samuel Humphreys, there follows this clause —"*It being the meaning and intent of the said Thomas S. Smith, the grantor, to convey to the said Morris Peak the same premises that was conveyed to the said Smith by Samuel Humphreys, and no more.*" Peak says this was inserted, not inadvertently and without any particular object, but that it was inserted "*to specify the title granted, and extent thereof.*" Smith avoids altogether giving any answer to the allegations of the bill touching the insertion of this clause. Peak purchased with actual knowledge of the trust. He had notice of its violation, and that Humphreys had conveyed to Smith in violation of his duty as trustee. His answer amounts to an admission of the fact, that he knew that Humphreys, at the time he conveyed to Smith, was insolvent. Peak took the title for his trust estate under circumstances which deprive him of the consideration of a *bona fide* purchaser. He must, therefore, be declared a trustee for the persons who are entitled to the trust estate.

But I cannot direct a decree in favor of the complainants. Peak expressly denies that they are the persons entitled to the trust estate. It was incumbent on the complainants to prove themselves the heirs at law of Charlotte Costill. This they have not done.